HURLEY et al., Respondents v. CITY OF RAPID CITY, Appellant

(121 N.W.2d 21)

(File No. 10021. Opinion filed April 11, 1963)

. H. R. Jackson, Sp. Asst. City. Atty., Rapid City, for Defendant and Appellant.

Bangs, McCullen, Butler & Foye, and Sieler & Brady, Rapid City, for Plaintiffs and Respondents.

BIEGELMEIER, J. This is an action for damages against a city for partial deprivation of right of access. Plaintiffs are owners of real property situated on the corner of Omaha Street and West Boulevard in Rapid City. On October 20, 1958, defendant city passed a resolution, which in part stated:

"WHEREAS, the State Highway Commission, hereafter designated as the Commission, proposes the improvement of a street or highway identified as West Boulevard, Federal Aid Interstate Project No. 1-A90-2(9)59 Pennington County, hereinafter designated as the Project, extending through the City of Rapid City, South Dakota, hereinafter referred to as the Municipality, located and further described as follows:

"From the North City Limits * * * to * * * the intersection of West Boulevard and Omaha Street,

"WHEREAS, the Commission is desirous of receiving Federal Funds for the improvement of said street or highway, and

"WHEREAS, the Statutes of the State of South Dakota give assent to the provisions of the Federal-Aid Highway

Act and acts amendatory thereof or supplementary thereto and regulations issued pursuant thereto by the Bureau of Public Roads, Department of Commerce, United States of America, which hereinafter collectively will be designated as the Act, and charge the Commission to do all things necessary fully to carry out the cooperation contemplated and provided for by the Act; and

"WHEREAS, the section of the Project within the Municipality will be subject to the provisions of the Act, and is within the legal jurisdiction of the Municipality for traffic regulations and the control of buildings and other structures; and

"WHEREAS, the construction of the project is conditioned upon the fulfillment of the obligation of the Municipality in a manner satisfactory to the Commission or the Commissioner of Public Roads, or both, or their authorized representatives;

"NOW, THEREFORE, be it resolved for and in consideration of the Commission's undertaking of this Project under the requirements of the Act, that insofar as its legal jurisdiction over the Project is concerned the Municipality assents to the requirements of the Act and pledges its good faith to carrying out the purposes stipulated in the Act, and to this end the Municipality hereby agrees:

"1. That all signs and traffic control devices * * * will be in conformity with the Manual on Uniform Traffic Control Devices * * *approved by the Commission * * *.

"2. That it will not designate a speed limit of less than 50 miles per hour.

"3. That it will prohibit all parking.

"4. That it will not allow access to the project at points other than shown on the plans without prior approval of the Commission, the Commissioner of Public Roads, or both, or their authorized representatives.

"5. That having examined the plans for the project prepared under the supervision of the State Highway Commission * * * the plans as shown are hereby approved.

"6. That the Municipality will enact such ordinances as are necessary to properly enforce any of the above provisions.

"7. That the Mayor is authorized and directed to enter into a mutual agreement with the Commission providing for the undertaking of this project under the consideration described above."

An agreement that "all provisions of the Resolution" above were accepted and binding was entered into by the city and the State Highway Commission. The plans referred to showed a physical barrier in the form of a guardrail in the highway along West Boulevard. This barrier was erected adjoining the east side of plaintiffs' lot by the contractors pursuant to contracts awarded by the South Dakota Highway Commission and it prevented access from West Boulevard to plaintiffs' property. No condemnation proceedings had ever been had with reference to this property.

Defendant made a motion to dismiss the action for the reason plaintiffs' complaint failed to state a claim upon which relief could be granted (SDC 1960 Supp. 33.1002) and for judgment on the pleadings. This was based on the amended complaint, stipulations as to facts and exhibits made a part of the record and which it was agreed the court could consider in ruling on the motion. This record was the result of a liberal use of Interrogatories, SDC 1960 Supp. 36.0531, and Admissions, SDC 1960 Supp. 36.0605 and presents the question of legal liability of the city for the damages claimed.

The National System of Interstate and Defense Highways known as the "Interstate System" is part of a road assistance building plan originating in the "Federal-Aid Highway Act of 1944", 58 Stat. 838, 842, now in U.S.C.A. Title 23. By definitions in Sec. 101 construction includes rights of way and highways include streets. The routes to be selected by joint actions of state highway departments with the plans and specifications are sub-

ject to the approval of the Secretary of Commerce before they are eligible for projects in which Federal funds participate. Sec. 302 requires any state desiring to avail itself of the provisions of the title to have a state highway department with adequate powers to discharge the duties required therein and Sec. 110 a formal project agreement to be entered into by that department and the secretary. Sec. 111 requires the agreement to contain a clause the state will not permit any points of access or exit, in addition to those in the plans approved by the secretary, without his prior approval and other restrictions. Construction is required to be done by, or under the direct supervision of, the State Highway Department.

The South Dakota Legislature by Ch. 104, Laws of 1955, authorized the State Highway Commission, in cooperation with agencies of the U. S. Government to locate and construct the South Dakota part of this Interstate System. It now appears in SDC 1960 Supp. as Sections 28.0231 through 28.0236. Section 28.0233 authorizes the Commission to acquire rights of way, establish, limit and control points of ingress and egress and prohibit entrance to or egress from the Interstate System at points not so designated.

By the admitted facts defendant city did not construct, nor enter into any agreement with the contractor who did construct, the barrier which prevents access as it was stipulated the physical construction and improvement of West Boulevard was done by contractors pursuant to contracts awarded by the State Highway Commission. Plaintiffs base their right of action on the above resolution and agreement. The question presented is: Did the city, as plaintiffs claim, by approving the plan for the project prepared by the State Highway Commission, exercise its power of eminent domain and become liable for damages resulting from the subsequent construction of the barrier by the contractors under their contract with the State Highway Commission?

██ SDC 28.0101 defines a highway as "Every way or place of whatever nature open to the public, as a matter of right, for purposes of vehicular travel, is a highway. * * *" SDC 1960 Supp. 44.0301 (14) is substantially the same. SDC 28.0107

states "The highways of this state consist of streets and alleys within the limits of municipal corporations, the State Trunk Highway System, the county highway systems * * *" etc. The state as principal and creator of municipal corporations has absolute control over them, unless some constitutional provision intervenes. Thus the legislature may grant power to a municipality to regulate the use and improvement of streets, SDC 45.0201(44), (78), (79), (94), (99) and SDC 45.17, and the use and speed of motor vehicles. SDC 45.0201(32), (41). However, it may provide specific regulations for and limits in the exercise of those powers as indeed appears in much of SDC 44.03 relating to motor vehicles. See also SDC 1960 Supp. 44.0303 which specifically mentions "streets or highways" and SDC 1960 Supp. 28.0209. To sum up, the legislature has paramount control over all the public highways of the state, including city streets and county roads and it may exercise it directly, may delegate the power and once delegated, may recall it. Cabell v. City of Cottage Grove, 170 Or. 256, 130 P.2d 1013, 1019, 144 A.L.R. 286. In Handlan-Buck Co. v. State Highway Commission, 1958, Mo., 315 S.W.2d 219, the court said:

> "The power of establishing limited access state highways is of statewide concern. Its exercise affects the safety of all persons traveling upon the roads of this state. The state police power is in such a case superior to that of a municipality."

See also 18 Am.Jur., Eminent Domain, § 83, 1962, Cumulative Supplement.

 The United States statutes contemplate the Interstate System must be constructed by a State Highway Department with adequate powers to discharge the duties required by U.S.C.A. Title 23; that it must submit plans, specifications and project agreements including limits of access satisfactory to the Secretary of Commerce. By SDC 1960 Supp. 28.0231 - 28.0236, the South Dakota State Highway Commission is empowered to construct, maintain and operate the Interstate System, designate points of ingress and egress therefrom and prohibit entrance to or egress from the highway at points not so designated. We conclude the fact a municipal corporation is asked and does adopt

or consent to plans for Interstate Highways is not an exercise of its right of eminent domain or subject it to an action for damages when the State Highway Commission thereafter constructs or causes the construction.

Plaintiffs infer that Ch. 155, Laws 1953 (SDC 1960 Supp. 28.09A) as to Controlled-Access Facilities applies and that before any such facility can be designated consent of the municipality must be obtained and the destruction of access to plaintiffs' property was accomplished by virtue of the city's agreement authorized by that statute; that by giving such consent it became liable for damages. This chapter can be recognized as originating from the "Model Controlled - Access Highway Act" adopted in whole or in part by many states. See St. Clair County v. Town of Riverside, 272 Ala. 294, 128 So.2d 333. As we are of the opinion subsequently enacted Ch. 104, Laws 1955, (SDC 1960 Supp. 28.0231-28.0236) relating to Interstate Highways is the chapter under which the State Highway Commission was authorized to, and did, in cooperation with the United States Government, exercise such authority therein granted, it is unnecessary to further comment on the 1953 act.

Bogue v. Clay County, 75 S.D. 140, 60 N.W.2d 218 is cited as authority for holding the city liable. The difference is the work in Bogue involved a secondary and feeder road instituted by Clay County and done by the state "solely as agent for the political subdivision" under the clear wording of the controlling statute. It was then SDC 1952 Supp. 28.0231, now SDC 1960 Supp. 28.0230. Here the work was in full control of, initiated and completed by the State Highway Commission. That it sought and obtained the consent of the city so as to maintain good relations between governmental subdivisions and departments and cooperation to exercise its police power to regulate traffic thereon is no reason to hold the city legally responsible. That being so, other questions presented are not before the court and we express no opinion as to liability of the state for the construction of the barrier. The motion to dismiss the complaint should have been granted and the order appealed from is accordingly reversed.

All the Judges concur.