KUHN, Appellant v. WATERTOWN CEMENT PRODUCTS
CO. et al., Respondents

(68 N. W.2d 241)

(File No. 9475.   Opinion filed February 3, 1955)

**McFarland & Paterson,** Watertown, for Plaintiff-Appellant.

**Davenport, Evans, Hurwitz & Smith and Robert C. Heege,** Sioux Falls, and **Loucks, Oviatt & Bradshaw,** Watertown, for Defendant-Respondent.

RUDOLPH, J. This action was brought in behalf of Jerome Kuhn, a minor. Jerome was injured while a silo was being constructed by defendant and it was sought to recover damages for the injury. A jury returned a verdict for defendant and plaintiff has appealed.

There is little dispute in the facts. At the time the accident occurred Jerome was 12 years of age. He was apparently a normal boy of that age. He was visiting at the farm of his uncle, John Enders, near Watertown. Jerome went to the farm on Sunday. Construction work was started on the silo Monday morning. That morning Jerome's uncle told him not to go near where the men were working on the silo because it was dangerous and he might get hurt by something falling. Tuesday the outside wall of the silo was in place, and the workmen commenced the work of glazing the inside. Glazing consists of spreading a mixture of cement and water on the wall. This mixture is prepared on the ground and elevated to men on a platform inside the silo. The mixture is spread on the walls with brooms. There are twelve openings in the silo each about two feet square extending from the top to the bottom. All except the bottom four of these openings are covered by a half circle metal chute which extends down from the top. The bottom of the chute was open, and about nine and one-half feet from the floor. The silo was built at the southeast corner of the barn and the chute came down into a part of the barn known as the silo room.

The workman preparing the glazing material was in the silo room. He used an oblong mortar box and hoe for this purpose and sent the mixture by means of rope and pails up to the men inside the silo. As this workman was performing this work Jerome and his two younger cousins entered the silo room. Jerome testified that one of the children bumped this workman and he said "step back". The workman testified that he told them they better get out of there before they got hurt. While in this silo room Jerome looked up to observe the operation of glazing within the silo and was struck in the eye with some of the falling cement mixture. The result was the loss of sight of the eye.

On direct examination Jerome testified as to the incident in the silo:

"Q. Just how were you standing there, the three of you? A. Well Roland was by the door and Delores was in the middle and I was sort of toward the silo.

"Q. About how close were you to the silo as you stood there? A. I couldn't say.

"Q. Well, could you indicate about how far by any object? A. About the middle of the desk there.

"Q. As you stood there what did you do or see? A. I watched him for a while and then I looked up and just as I was bringing my head down I got the lime in my eye. * * *

"Q. When you first stepped into the barn or feed shed and stood there in the door what did you see over in the silo room? A. This one man was mixing cement and then I saw another man going up the chute.

"Q. Going up the chute? A. Yes.

"Q. Did you see him after that at all? A. No.

"Q. And you saw these two men, the one just going up the chute? A. I just saw his feet, the one that was going up the chute.

"Q. When you saw that as you stood there in the door were the other children with you? A. Yes.

"Q. And then what did you do? * * * A. Then we walked over there and stepped up on this cement that was there, they had a little platform, and we stepped up where he was mixing, and then he accidentally bumped Delores and he said step back so then we stepped in front of him. * * *"

On cross-examination Jerome testified as follows:

"Q. I want to be clear about what was said to you, Jerry, when you got over near where this man was working on the ground. He told you, as I understood your testimony, to step back, is that right? A. Yes.

"Q. And it was when you were out there just a very short time before you got hurt? A. Yes.

"Q. You stepped forward and looked up the chute? A. Yes I looked up through one of the doors in the chute, through one of the doors just where the chute comes, I think it's the second one above the chute. I don't know how many doors that is up."

The workman who was mixing the cement testified that after he had first warned the children "when I noticed him again he had his head inside the silo door and before I could say anything his eye was filled with cement."

The trial court submitted the case to the jury on the basis that the jury might find the defendant liable under the doctrine of attractive nuisance. This doctrine first found expression in our law in the case of Baxter v. Park, 44 S.D. 360, 184 N.W. 198, 200, wherein it was said:

"* * * the landowner, who places dangerous articles or structures upon his own premises, so situated that children of tender years, unconscious of danger, and led merely by childish curiosity and impulse, and who, living in proximity to such premises, may have easy access thereto, owes to such children the duty to take precautions such as may be reasonable under the particular circumstances to avoid danger to them which he knows, or may be reasonably expected to know, may exist because of the character of the article or structure and its location and immediate surroundings."

In this opinion we simply assume that the evidence was sufficient to sustain a verdict for plaintiff under the doctrine of attractive nuisance. However, the jury returned a verdict for defendant, and plaintiff, as appellant in this court complains, first, that the proof and evidence sustained a charge of direct negligence exclusive to and in addition to the attractive nuisance doctrine and theory, but that the court refused to submit this question and to give proper instructions to the jury thereon and limited the recovery on the part of the plaintiff to the so-called attractive nuisance doctrine.

■    We cannot agree with this contention.  Were it not for the doctrine a child would be entitled only to the protection of a trespasser.  Under this doctrine, because of the child's tender years and the consequent lack of perception and responsibility, liability results notwithstanding the trespass if there is a failure to take precautions such as may be reasonable under the particular circumstances.  Baxter v. Park, supra.

■    Having the case submitted to the jury under the doctrine of attractive nuisance was the most favorable submission the plaintiff could receive.  If the plaintiff were not in the silo room in response to the attraction he was, in view of the warnings to him, in that room simply as a trespasser.  His uncle had warned him to stay away from the silo, and the workman had in any event told him to "step back".  Accepting the view that after Jerome's presence in the silo room was discovered, even though he were a trespasser, it was incumbent upon the defendant to take precautions for his safety, certainly it was not reasonably to be anticipated that instead of stepping back as admonished Jerome would either step forward or lean forward and look up into the chute or the openings and be injured because of such act.  The time element also is important.  The children were in this room for only a few minutes at the most, and after their presence was known defendant had neither time nor opportunity to hang a canvass over the chute or take such other precautions as appellant suggests.  As we view this evidence, therefore, unless plaintiff was entitled to a verdict under the doctrine of attractive nuisance, which the jury denied, there was no basis upon which recovery might be predicated.

Appellant next complains because of the refusal of the trial court to receive a third party complaint in evidence.  The facts upon which this error is alleged are as follows:  Following the service of the original complaint upon defendant, it served a third party complaint under the provisions of SDC Supp. 33.04A.  This complaint was not signed by defendant but by counsel only.  By this third party complaint it was sought to bring into the action Jerome's uncle who had con-

tracted for the building of the silo. The portion of the complaint material to this issue is as follows:

> "* * * that the said Third Party Defendant carelessly and negligently failed to warn the Plaintiff of the dangers in going into the interior of said silo and carelessly and negligently failed to keep said Plaintiff away from said silo where this Plaintiff was working, and negligently failed to erect guards or warnings of any kind to keep said Plaintiff away from the silo, which this Plaintiff (sic) was working upon, and carelessly and negligently permitted said Plaintiff to come upon the premises when he, the said Third Party Defendant, knew that the condition inside of and around said silo where this Plaintiff was working involved unreasonable risk of Plaintiff sustaining serious bodily injury; that said Third Party Defendant knew that Plaintiff, because of his youth, did not and would not likely discover or anticipate the condition or realize the risks involved in going around and into said silo and the chute immediately adjacent thereto; that said Third Party Defendant knew or, in the exercise of ordinary care, should have known that said Plaintiff, being a minor child, would be attracted by the work which this Plaintiff was doing upon said silo."

Subsequently and before trial this third party complaint was dismissed.

■ It is contended that this third party complaint is an admission by defendant that the silo and the work thereon constituted an attractive nuisance and should have been received in evidence as an admission against interest. But this third party complaint was withdrawn and not signed by defendant. It was signed by counsel. There was no showing that the recitals thereof, sought to be used as an admission, were inserted under the personal direction of defendant, or have since knowingly received its sanction or ratification. Under these circumstances the trial court correctly refused to receive in evidence the third party complaint. See Corbett

v. Clough, 8 S.D. 176, 65 N.W. 1074; La Rue v. St. Anthony & Dak. Elevator Co., 17 S.D. 91, 95 N.W. 292.

■ Appellant contends that the trial court erred in refusing to submit to the jury as elements of damage, medical and hospital bills. The court's refusal of these items was on the theory that the cause of action based thereon was in favor of the parent. Doyen v. Lamb, 75 S.D. 77, 59 N.W.2d 550. However, the jury determined there was no liability and since the excluded evidence has no bearing on the right to recover, its exclusion, if error, was without prejudice. Larimore v. Dobbs, 74 S.D. 635, 57 N.W.2d 750.

Appellant also complains of certain instructions given to the jury, and the court's refusal to give certain requested instructions. We have considered the instructions as given, and in the light of the requested instruction, it is our opinion that the issues were fully and fairly submitted to the jury.

The judgment appealed from is affirmed.

All the Judges concur.